UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Emma Stephanie Ruddock,                     Case No.: _____

Plaintiff,


COMPLAINT

JURY TRIAL REQUESTED

v.

Matthew Severance, individually;
Jane Doe, individually;
Andrew Schroeder, individually; and
Alexandra Dubay, individually.

Defendants.

---

## I.    PRELIMINARY STATEMENT

1. In the wake of the killing by law enforcement of Winston Smith, civil

   unrest broke out in the Uptown area of Minneapolis. On June 4, 2021,

   Plaintiff Emma Stephanie Ruddock, a resident of the Uptown

   neighborhood, biked around her neighborhood taking photographs of the

   civil unrest and periodically engaged in peaceful protest and verbal

   criticism of Minneapolis police officers. On June 5, 2021, at approximately

   12:45 a.m., Plaintiff biked southbound on Hennepin Avenue on her way to

   her home on Girard Avenue South. Minneapolis police officers then

   arrested Plaintiff though there was never arguable probable cause to

believe that she was engaged in any criminal activity nor arguable probable cause to believe she was ever part of any unit that was engaged in criminal activity. Upon information and belief, Ruddock's arrest was motivated in substantial part by her verbal criticism of Minneapolis police officers. Ruddock was thereafter unlawfully detained for approximately 80 hours.

2. Plaintiff now commences this action against the above-named defendants for violation of her rights under the United States Constitution including her right to freedom of speech as protected by the First Amendment and her right not to be subject to unreasonable seizure as protected by the Fourth Amendment. Plaintiff's claims against the individual defendants are grounded in 42 U.S.C. §1983.

3. Plaintiff demands that this action be tried to a jury.

## II.   PARTIES

*A. Plaintiff*

4. Plaintiff Emma Stephanie Ruddock ("Ruddock") is a resident of Minneapolis, Minnesota.

*B. Defendant Minneapolis Police Officers*

5. Defendant Matthew Severance ("Severance"), Minneapolis Police Department badge number 6457, at all times relevant hereto was a licensed peace officer employed with the Minneapolis Police Department

("MPD") acting within the course and scope of his employment and under color of law.

6. Defendant Jane Doe ("Doe"), whose identity is presently unknown, upon information and belief, at all times relevant hereto was a licensed peace officer employed with the MPD as a higher-level official within the MPD acting within the course and scope of their employment and under color of law.

7. Defendant Andrew Schroeder ("Schroeder"), badge number 6385, at all times relevant hereto was a licensed peace officer employed with the MPD acting within the course and scope of his employment and under color of law.

8. Defendant Alexandra Dubay ("Dubay"), badge number 1617, at all times relevant hereto was a licensed peace officer employed with the MPD acting within the course and scope of her employment and under color of law.

### III.    JURISDICTION

9. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth Amendment to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4) and 1367(a) and the aforementioned statutory and constitutional provisions.

## IV. FACTS

10.  On June 3, 2021, Winston Smith was killed by officers of the United States Marshal's Service Fugitive Task Force in a parking ramp in Uptown Minneapolis near the intersection of Girard Avenue South and West Lake Street.

11.  In the aftermath of this tragedy, civil unrest broke out in Minneapolis, including frequent protests and demonstrations in the Uptown area.

12.  At all times applicable to this lawsuit, Ruddock resided at 3117 Girard Avenue South, Minneapolis, Minnesota, within the Uptown neighborhood and in very close proximity to where Winston Smith was killed.

13.  At all times relevant hereto, Ruddock was an independent photojournalist.

14.  On the morning of June 4, 2021, Ruddock observed and periodically joined peaceful protesters gathered at the intersection of West Lake Street and Girard Avenue South, in Minneapolis.

15.  Ruddock took photographs of the protest on the morning of June 4, 2021.

16.  During the early evening hours of June 4, 2021, Ruddock returned to the area of the intersection of West Lake Street and Girard Avenue South and took additional photographs of the protesters gathered.

17.  Later that evening, Ruddock met a friend, Nicholas Hernandez, ("Hernandez") and together they biked around the Uptown neighborhood

of Minneapolis observing, but not participating in, the unfolding civil unrest.

18.  Ruddock periodically exercised her First Amendment right to free speech by verbally commenting on the actions of certain law enforcement but did not engage in any act of civil disobedience.

19.  Between approximately 11:47 p.m. on June 4, 2021, and 12:04 a.m. on June 5, 2021, Minneapolis police officers issued three dispersal orders to the protesters gathered at the intersection West Lake Street and Girard Avenue South.

20.  Ruddock was not present at the intersection of West Lake Street and Girard Avenue South when the dispersal orders were issued and had no knowledge of the same.

21.  After the dispersal orders were issued, Minneapolis police officers left the area of Lake Street and Girard Avenue South without making any arrests, despite observing protesters in the area in violation of the dispersal orders.

22.  Upon information and belief, sometime after the dispersal orders were given, Ruddock and Hernandez resumed biking around the Uptown neighborhood area.

23.  Approximately 40 minutes after law enforcement issued the dispersal orders, upon information and belief, Sergeant Matthew Severance received

an order from Defendant Jane Doe to arrest anyone in the 3000 block of Hennepin Avenue and the surrounding area.

24. At approximately 12:40 a.m., a communication went out between MPD officers, including the defendants, to "shut it down" and "own Lake Street West."

25. Defendant Severance subsequently gave the directive to other MPD officers, including Defendants Schroeder and Dubay, to arrest everyone they encountered in or near the intersection of Hennepin Avenue South and West Lake Street for "PC" riot.

26. At or near this time, Minneapolis police officers were staged at the Lunds and Byerlys parking lot on West Lake Street and Humboldt Avenue South.

27. While near the Lunds and Byerlys parking lot, Ruddock verbally criticized the actions of the Minneapolis police officers staged there, including Defendants Schroeder and Dubay.

28. After the interaction with Minneapolis police officers, Ruddock and Hernandez left the area of the parking lot with the intention of returning to Ruddock's home on Girard Avenue South.

29. MPD officers, including Defendants Schroeder and Dubay, then performed a "kettle" maneuver at the 3000 block of Hennepin Avenue.

30. The purpose of the kettle maneuver was to sweep up and arrest all persons in the area of Hennepin Avenue and Lake Street for the criminal offense of riot irrespective of whether there was an individualized basis to believe there was arguable probable cause to arrest a particular person for any offense.

31. At approximately 12:40 a.m., Hernandez and Ruddock were riding their bicycles southbound on Hennepin Avenue from Lake Street toward 31st Street on their way to Ruddock's apartment on Girard Avenue South when they observed a line of law enforcement officers heading northbound on Hennepin Avenue from 31st Street towards Lake Street. Ruddock also observed behind her at approximately the same time another line of MPD officers headed southbound on Hennepin Avenue from Lagoon Avenue towards Lake Street.

32. Ruddock got off her bicycle, and, while carrying her camera in its case, began walking with her bicycle on the public sidewalk southbound on Hennepin Avenue towards 31st Street.

33. While Ruddock was walking down the public sidewalk on Hennepin Avenue, at all times acting lawfully, she was ordered to get down to the ground by Defendant Schroeder.

34. As Ruddock began lowering herself to the ground with both hands raised, Defendant Schroeder forcibly pushed Ruddock to the ground and informed her she was under arrest.

35. Defendants Schroeder and Dubay then forcibly restrained Ruddock with zip ties.

36. Ruddock, who was distraught, informed Defendants Schroeder and Dubay repeatedly that she was a journalist and not involved in the civil unrest, to no avail.

37. While Defendants Schroeder and Dubay allowed others present on Hennepin Avenue to return home, upon information and belief, Ruddock was singled out and arrested.

38. At no time did Defendants Schroeder and Dubay have arguable probable cause to believe that Ruddock had committed any offense or was part of any unit of individuals who were engaged in criminal activity.

39. The arresting officers present at Hennepin Avenue, including the defendants, were aware there was no arguable probable cause justifying the arrests of all individuals present in the area of the intersection of Hennepin Avenue and Lake Street and Ruddock in particular.

40. For example, one arresting officer expressed frustration that the command he received was to "grab everyone for PC riot."

41.  That same officer informed an individual he detained on Hennepin
     Avenue, mere feet from where Ruddock was arrested, that he was "in the
     wrong place, wrong time" and that he needed to retain a lawyer because
     that was an "affirmative defense."

42.  That same officer exclaimed to another officer, "PC Riot, are you f******
     kidding me....  I wanted to cut the cuffs off these guys…. What did they do
     wrong?"

43.  Following her unlawful arrest, Ruddock was transported to the
     Hennepin County Adult Detention Center ("ADC"), where she was
     detained and held for probable cause third degree riot in violation of Minn.
     Stat. § 609.71.

44.  Ruddock was detained at the ADC until she was released sometime on or
     about June 8, 2021.

45.  Ruddock was never charged with any crime as a result of the June 5,
     2021 arrest.

46.  As a direct result of the actions of Defendants Severance, Doe,
     Schroeder, and Dubay in unreasonably seizing Ruddock without arguable
     probable cause, she sustained significant injury including, but not limited
     to, her loss of liberty; physical injury to her lower extremities and wrists;
     exacerbation and aggravation of a prior mental health diagnosis; and
     additional emotional injury; and has therefore in the past and will in the

future incur pain, embarrassment, and emotional distress. Therefore, Ruddock has been damaged in an amount greater than Seventy-Five Thousand and no/100 ($75,000.00) Dollars.

## V.  FEDERAL CLAIMS AGAINST DEFENDANTS SEVERANCE, DOE, SCHROEDER, AND DUBAY IN THEIR INDIVIDUAL CAPACITIES

*Count I.  42 U.S.C. §1983:  Unreasonable Seizure in Violation of the Fourth Amendment*

Plaintiff realleges the above allegations as if here and after set forth in full and further states and alleges as follows.

47.  As of June 4, 2021, Ruddock had a clearly established right under the Fourth Amendment to the United States Constitution not to be subject to a warrantless arrest without probable cause.

48.  Defendants Matthrew Severance, Jane Doe, Andrew Schroeder, and Alexandra Dubay violated this right when they caused Ruddock to be arrested without arguable probable cause, thereby depriving Ruddock of her right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure in violation of 42 U.S.C. §1983.

49.  That such conduct by Defendants Severance, Doe, Schroeder, and Dubay was objectively unreasonable in light of the totality of the then existing circumstances, and the unlawfulness of such actions were apparent in light of the then clearly established law.

50.    That as a result of the actions of Defendants Severance, Doe, Schroeder, and Dubay in unreasonably seizing Ruddock without probable cause, she sustained the injuries and incurred the damages set forth in paragraph 46 above.

*Count II.  42 U.S.C. § 1983: Violation of Ruddock's rights guaranteed by the First Amendment*

Plaintiff repeats and realleges the above allegations as if here and after set forth in full and further states and alleges as follows.

51.    As of the date of the incident, Emma Stephanie Ruddock had a clearly established right under the First Amendment to the United States Constitution to engage in verbal criticism directed at Minneapolis police officers carrying out their duties in public.

52.    Ruddock engaged in protected First Amendment activity when she verbally criticized the actions of the Minneapolis police officers staged in or near the parking lot near the intersection of Lake Street and Humboldt Avenue South including Defendants Schroeder and Dubay.

53.    By arresting Ruddock for third degree riot on Hennepin Avenue without arguable probable cause, Defendants Schroeder and Dubay took an adverse action against Plaintiff that would chill a person of ordinary firmness from continuing to engage in this protected First Amendment activity.

54.    The actions of Defendants Schroeder and Dubay were caused in whole or substantial part as retaliation against Ruddock for engaging in activity protected by the First Amendment.

55.    At the time they arrested Ruddock in retaliation for engaging in activity protected by the First Amendment it would have been clear to a reasonable law enforcement official that what Defendants Schroeder and Dubay did in arresting Ruddock without probable cause violated the First Amendment.

56.    That as a result of the actions of Defendants Schroeder and Dubay in unreasonably seizing Ruddock without probable cause in retaliation for engaging in activity protected by the First Amendment, Plaintiff sustained the injuries and incurred the damages set forth in paragraph 46 above.

*Count III.  Punitive Damages Under Federal Law*

Plaintiff realleges the above allegations as if here and after set forth in full and further states and alleges as follows.

57.    All of the aforementioned acts, errors and omissions of Defendants Severance, Doe, Schroeder, and Dubay were committed in bad faith and with reckless disregard for the rights and safety of Ruddock, as well as other citizens, so as to subject said defendants to punitive damages pursuant to the statutes and common law of the United States of America.

## VI. PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully prays that this Court grant her relief as follows:

1. Awarding judgment in favor of Plaintiff Emma Stephanie Ruddock against Defendants Severance, Doe, Schroeder, and Dubay, jointly and severally, in an amount greater than $75,000.00 as and for compensatory damages.

2. Awarding judgment in favor of Plaintiff Emma Stephanie Ruddock against defendants jointly and severally in an amount greater than $50,000.00 as and for punitive damages pursuant to 42 U.S.C. §1983.

3. Awarding plaintiff her reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

4. Awarding plaintiff her reasonable costs and disbursements herein.

5. For such other and further relief as to the Court is just and equitable.

GOETZ & ECKLAND P.A.

By: _____

FREDERICK J. GOETZ
Attorney Registration No. 185425
NATALIE R. COTE
Attorney Registration No. 403533
Banks Building
615 1st Avenue NE, Suite 425
Minneapolis, MN 55413
(612) 874-1552

ATTORNEYS FOR PLAINTIFF